# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Kevin HE and Lin PAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-01449 (PLF) |
| | ) | |
| Michael CHERTOFF, Secretary of | ) | |
| Department of Homeland Security, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' *CORRECTED* MOTION TO DISMISS FOR LACK OF JURISDICTION, FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER TO THE NORTHERN DISTRICT OF TEXAS

Thomas J. O'Brien #388696
Lauren Aucoin #488945
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 739-5186 (Telephone)
(202) 739-3001 (Facsimile)
to'brien@morganlewis.com (E-mail)
laucoin@morganlewis.com (E-mail)

Attorneys for Plaintiffs

Dated:  December 20, 2007

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................ 4

    A.    Parties ....................................................................................... 4

    B.    Adjudication of Adjustment of Status .......................................... 5

    C.    Statutory Framework Governing Adjustments of Status ................... 8

ARGUMENT .................................................................................................. 10

I.     THIS COURT HAS JURISDICTION TO REQUIRE DEFENDANTS TO ADJUDICATE PLAINTIFFS' ADJUSTMENT OF STATUS APPLICATIONS, WHICH HAVE BEEN PENDING MORE THAN FOUR YEARS ............................ 10

    A.    There Is A Split Of Authority In the Burgeoning Case Law Regarding The Dispute Over Subject Matter Jurisdiction ........................................ 11

    B.    This Court Has Subject Matter Jurisdiction To Adjudicate Plaintiffs' Claims Under The Administrative Procedure Act And The Mandamus Act ...... 15

          1.    There is federal question jurisdiction under the APA for Plaintiffs' claims .................................................................................. 16

          2.    The Mandamus Act provides an alternative basis for exercising subject matter jurisdiction in this case .................................... 19

    C.    No Limitation Under The INA Bars This Court From Adjudicating Plaintiffs' Processing-Delay Claims .......................................... 21

          1.    "Any judgment" under § 1252(a)(2)(B)(i) refers to final discretionary determinations regarding granting of relief, not to the pace of processing adjustment of status applications ............................ 23

          2.    "Any other decision or action" under § 1252(a)(2)(B)(ii) does not apply to "inaction" or to the pace of adjudication because discretionary authority for such matters has not been specified by Congress ............................................................................ 25

II.    BECAUSE PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF UNDER THE APA AND THE MANDAMUS ACT, DEFENDANTS' MOTION TO DISMISS MUST BE DENIED ........................................................... 31

III.   VENUE IN THIS COURT IS PROPER AND THUS THIS ACTION SHOULD NOT BE TRANSFERRED TO THE NORTHERN DISTRICT OF TEXAS ................ 34

    A.    This Judicial District Is a Proper Forum Not Only Because Defendants Reside Here, But Also Because a Substantial Part of the Events or Omissions Giving Rise to the Claim Occurred in the District of Columbia ...... 35

    B.    The Private and Public Factors Weigh Against Transfer ................... 37

CONCLUSION ................................................................................................ 39

When it comes to processing green card applications, Defendants take the position that no amount of delay is too long and, regardless of how many years the process may drag on, no court has jurisdiction to compel the culpable agency to perform its statutory duty. Plaintiffs Xin He and Lin Pan have been waiting four and a half years for a decision on their green card applications, after the agency told them at the outset it could take up to a year and a half. Frustrated by years of inaction and radio silence, Plaintiffs made numerous inquiries to try to break loose what has become a nightmarish bureaucratic log-jam, all to no avail. In desperation, they sought counsel and brought this action against the relevant governmental officials and agencies, recognizing that such an act might provoke retaliation, but concluding that judicial intervention is the only means of bringing about a conclusion to this unconscionable delay.

Defendants requested two extensions before responding to the complaint. Defendants finally made their pending motion to dismiss, resting on two legal theories: the Court lacks subject matter jurisdiction over Plaintiffs' claims and Plaintiffs' have failed to state a claim on which relief can be granted. The premise underlying both theories is that processing green card applications is entirely discretionary and, as such, the relevant statutes place this dispute beyond the jurisdictional reach of the federal courts. Defendants alternatively have moved for a transfer of venue from this Court to the Northern District of Texas, on the ground that Plaintiffs' pending applications, which were filed in Vermont in June 2003 in accordance with then existing procedures, recently were transferred to a service center in Dallas, Texas.

These motions are just the latest maneuver in Defendants' protracted campaign for postponing the day of reckoning. They should be denied for several reasons.

First, two statutes, the Administrative Procedure Act and the Mandamus Act, provide subject matter jurisdiction for Plaintiffs' claims, in conjunction with 28 U.S.C. § 1331.

Where Congress directs an agency to perform a statutory duty, the agency must do so "within a reasonable time" after the matter is submitted for action. Congress has given such a direction with respect to green card applications submitted by aliens, technically termed requests for "adjustment of status," requiring that such applications be adjudicated by the designated agency. Courts have jurisdiction to compel agencies to discharge the duties delegated to them, unless a statute precludes judicial review or the agency action is purely discretionary.

Defendants principally contend that decisions on adjustment of status applications are discretionary and the immigration laws bar courts from reviewing the pace by which the agency makes such decisions. This argument misconstrues the statutory provisions with respect to the ultimate granting or denial of green card requests, a subject as to which Plaintiffs have not asked for any relief from this Court. The statutory text, moreover, does not restrict a court's jurisdiction to determine whether the pace of decision-making meets the statutory "within a reasonable time" standard. Defendants thus ask the Court to read limitations into the statute that Congress has not put there. Defendants further contend that this rule of reason does not provide a "meaningful standard" for the decisions at issue here, an argument that the D.C. Circuit flatly rejected in cases involving very similar issues of bureaucratic foot-dragging.

Defendants' Rule 12(b)(6) argument centers on allegations of the complaint that point to four-plus years of unexplained delay and the absence of any ostensible action on Plaintiffs' applications. Numerous courts have held that processing delays of four years, and even shorter periods, for decisions on green card applications are unreasonable and warrant relief. Defendants have submitted extensive declarations from two of the affected agencies. Those declarations provide no grounds for dismissal, however, because proof bearing on merits issues – especially self-serving proof without the opportunity of discovery by Plaintiffs – must not be

considered in ruling on the legal sufficiency of the complaint. Moreover, the declarations actually support Plaintiffs' allegations concerning unreasonable delay and the absence of any other remedy to rectify the years of inaction.

Finally, as alternative relief, Defendants seek to transfer venue to the Northern District of Texas. The principal reason is that a service center in Dallas is now the custodian of the file on Plaintiffs' applications. However, the case was assigned to service center in Vermont from the time of filing in June 2003 to March 2007. Moreover, the Texas center has done virtually nothing with the file since receiving it. Thus, it is simply wrong to suggest, as Defendants do, that Texas is the place where the events and omissions giving rise to this action took place.

Two additional points bear on the venue motion. First, Defendants' declarants state that the primary reason for the excessive processing delay is the failure of an agency located in Washington, D.C. to perform background checks on Plaintiffs. Second, the file transfer from Vermont to Texas transpired only after Plaintiffs had threatened litigation, thus rendering that decision at least suspect now that Defendants rest their argument on it. Both of these considerations provide additional grounds to deny Defendants' change of venue motion.

This case cries out for judicial intervention. Defendants give no indication of when Plaintiffs' applications will be adjudicated. They acknowledge having no information about the time line during which these checks will be completed. Although applications like the ones filed by Plaintiffs are usually adjudicated by USCIS within six months of filing,[1] theirs have languished in bureaucratic "never-never land" for more than four years. Left to Defendants' own devices, another four years easily could pass without adjudication of Plaintiffs' applications.

---

[1]    U.S. Citizenship and Immigration Services, Texas Service Center Processing Dates, https://egov.uscis.gov/cris/jsps/Processtimes.jsp?SevaceCenter=TSC (last visited November 14, 2007).

# BACKGROUND

## A.    Parties

Plaintiff Xin He is a 35 year old Chinese citizen who first entered the United States in F-1 nonimmigrant student status to pursue a master's degree in electrical engineering at the University of Notre Dame, and subsequently earned a Ph.D. degree, also from Notre Dame, in the same field in 2001. Compl. ¶ 19.  Dr. He later received a Juris Doctor degree from Fordham University School of Law in 2006.  Dr. He is the beneficiary of an approved I-140 Immigrant Visa Petition (Receipt No. EAC-002-195-50769) based on a National Interest Waiver, recognizing that Dr. He's work in the field of intellectual property for U.S. technology companies is of substantial intrinsic merit and national in scope. *Id.*  The approved I-140 petition is the basis for which Dr. He is eligible to apply for lawful permanent residence.

Plaintiff Lin Pan is married to Dr. He.  She is a 31 year old Chinese citizen who first entered the United States in F-1 nonimmigrant student status in August 1998 to pursue a master's degree in economics from the University of Notre Dame. Compl. ¶ 20.  When the complaint was filed, Ms. Pan expected to take a position as an actuary with an insurance company.  *Id.*  She has since accepted that position.

On June 19, 2003, Dr. He, along with his spouse Ms. Pan, each filed I-485 Applications to Register Permanent Residence ("I-485 Application") with USCIS.  Compl. ¶ 21. Plaintiffs' applications were filed with the Vermont Service Center and remained at that location until March 2, 2007, when the applications were transferred to the USCIS Texas Service Center.  *Id.* Before the applications were transferred, on November 16, 2006, Plaintiffs, through counsel, requested that the USCIS Vermont Service Center adjudicate Plaintiffs' pending applications, and notified the Vermont Service Center that Plaintiffs were prepared to commence legal

proceedings if the responsible officers failed to perform their duties in a timely fashion. *Id.* ¶ 34. Plaintiffs never received a response as a result of this correspondence.

Plaintiffs named ten defendants in the Complaint, including five agencies and five officials who direct and oversee the duties Congress delegated to them. Compl. ¶¶ 6-15. Defendant Michael Chertoff is sued in his official capacity as the Secretary of the Department of Homeland Security ("DHS"). Defendant Chertoff is responsible for seeing to it that the duties of the DHS are discharged. *Id.* ¶ 6. Defendant DHS is responsible for overseeing the adjudication of I-485 Applications. *Id.* ¶ 7.

Defendant Emilio T. Gonzalez oversees the operation of U.S. Citizenship and Immigration Services ("USCIS") in his role as the director of the agency. *Id.* ¶ 8. Defendant USCIS, a bureau of DHS, adjudicates I-485 applications. *Id.* ¶ 9.

Defendant Evelyn Upchurch directs the Texas Service Center ("TSC") in her role as Director. *Id.* ¶ 10. Defendant TSC is a unit of Defendant USCIS and is responsible for the adjudication of certain I-485 applications, including those submitted by Plaintiffs. *Id.* ¶ 11.

Defendant Robert Mueller is the director of the Federal Bureau of Investigation ("FBI"). *Id.* ¶ 12. Defendant FBI is a bureau of the U.S. Department of Justice and is responsible for performing security background checks in connection with I-485 applications. *Id.* ¶ 13. At the time the Complaint was filed, Alberto Gonzales was the United States Attorney General. The Attorney General is sued because he supervises and directs the FBI. *Id.* ¶ 14. Finally, the Department of Justice has been named a defendant for the same reason. *Id.* ¶ 15.

**B.     Adjudication of Adjustment of Status**

The procedure to adjudicate I-485 applications requires Defendants USCIS and FBI to perform various tasks. The declaration of Genize X. Walker ("Walker Decl."), Supervisory Adjudication Officer for the TSC, was submitted as Exhibit 1 to Defendants' supporting

memoramdum ("Mem."). According to Ms. Walker, when an alien applies for adjustment of status, "USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and they is [sic] not a risk to national security or public safety." Walker Decl. ¶ 14. These checks involve three steps: an FBI fingerprint check for criminal history, an Interagency Border Inspection System (IBIS) check, and an FBI name check. *Id*. According to Ms. Walker, Plaintiffs' applications will be adjudicated once the background investigations are complete. *Id*. ¶ 19.

Dr. He has had his fingerprints taken twice, on July 1, 2004 and then again on July 21, 2007. Compl. ¶¶ 22-23. Ms. Pan was fingerprinted on July 1, 2004. Compl. ¶ 22. After the filing of the Complaint, Ms. Pan was fingerprinted a second time on November 7, 2007. Under USCIS procedure, a fingerprint check can be on file no longer than fifteen months at the time of adjudication. Walker Decl. ¶ 17. Accordingly, USCIS reschedules fingerprint appointments so that the fingerprints fall within the 15-month window when the case is adjudicated. *Id*.

Ms. Walker reported that "[P]laintiff's preliminary IBIS checks have been completed." Walker Decl. ¶ 17. She did not specify which of the two Plaintiffs she was referring to in that statement. So that remains a mystery.

Ms. Walker describes a procedure for expediting long-pending name checks from the FBI, under which the FBI moves certain applicants to the front of the line for background checks. Walker Decl. ¶¶ 11, 12. Ms. Walker acknowledges, however, that a backlog exists at USCIS in submitting "expedite" requests for cases the agency deems appropriate for this preferential treatment. *Id*. ¶ 10. She nowhere mentions the regulatory basis for this procedure because it was not established through notice-and-comment rulemaking under the APA.

Over the past two and a half years, Plaintiffs submitted at least seven inquiries to USCIS concerning the status of their applications. Compl. ¶¶ 30-35, 37. The response they received was that their applications were awaiting security background checks. *Id.* They were never encouraged to apply for expedited processing when they communicated with USCIS regarding the status of their cases. Ms. Walker's declaration makes clear that USCIS would not grant any request by Plaintiffs for expedited handling of their applications, in any event. Walker Decl. ¶ 12. In fact, the TSC claims that it has suspended processing of Plaintiffs' applications pending the outcome of the background checks. *Id.* ¶ 18.

Defendants also present a statement from an official of Defendant FBI who describes the name check process. Declaration of Michael A. Cannon, Section Chief, National Name Check Program Section, Records Management Division, ("Cannon Decl."). According to Mr. Cannon, 90 percent of all name check requests are cleared within 60 days. Cannon Decl. ¶ 14. The remaining 10 percent are reviewed further. *Id.* ¶ 15. One percent of all name checks render a review for possible derogatory information. *Id.* ¶ 17. Most troubling of all, it is not even possible for the FBI to "provide a specific or general time frame for completing any particular name check submitted by USCIS" and it cannot provide "any reliable estimate . . . as to how long it will take to review once it has begun." *Id.* ¶ 39.

Dr. He's application "remains pending the completion of national security background investigations." Walker Decl. ¶ 19. Ms. Pan's name check was completed on March 2, 2004, more than three and a half years ago. Cannon Decl. ¶ 42. However, as a dependent applicant to Dr. He's I-485 Application, Ms. Pan's I-485 Application cannot be adjudicated until Dr. He has been approved. Walker Decl. ¶ 19.

### C.    Statutory Framework Governing Adjustments of Status

The statutory framework for the immigration issues presented by this case is set out in the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* (2007) (the "INA").[2]  A foreign national in the United States in a lawful status (or who qualifies for an exemption from the lawful status requirement), may apply to USCIS for "adjustment of status," in which case the foreign national may obtain permanent resident status (a green card).  8 U.S.C. § 1255.  Where, as here, a foreign national qualifies for the "immigrant visa" classification and is admissible, USCIS is authorized to adjust the foreign national's status to that of a lawful permanent resident pursuant to that section of the INA:

> **Status as person admitted for permanent residence on application and eligibility for immigrant visa**
>
> (a)   The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification . . . may be adjusted by the Attorney General [and Secretary of Homeland Security], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if
>
> > (1)    the alien makes an application for such adjustment,
> >
> > (2)    the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and
> >
> > (3)    an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).  Lawful permanent residence with a green card affords a foreign national the right to live and work in the United States indefinitely as an immigrant.  8 U.S.C. § 1101(a)(20).  In addition, lawful permanent residence must have been obtained five years before an immigrant can apply for U.S. citizenship.  8 U.S.C. § 1427(a).

---

[2]    Throughout this memorandum, references to an Act of Congress followed by a section citation (*e.g.,* "INA § ____") are references to the sections of the United States Code where the cited provisions are codified.

The INA allocates only a certain number of immigrant visas in certain preference categories each year and aliens must "wait in line" until those who qualified previously are able to seek lawful permanent resident status. The State Department monitors immigrant visa availability and publishes a monthly bulletin that determines whether an immigrant visa is available to a foreign national based on each particular preference category and the individual's country of birth. The demand for immigrant visas within certain preference categories frequently exceeds the availability of immigrant visas, and as a result, a queue forms.

Adjustments of status are commenced by the filing of an I-485 application with Defendant USCIS. Upon receipt of the application, USCIS submits a national security screening request to the FBI, and USCIS will not adjudicate an application prior to completion of the background checks. Walker Decl. ¶¶ 4, 5. The background checks include an FBI fingerprint check, an Interagency Border Inspection System (IBIS) check, and an FBI name check. *Id.* ¶ 14.

In an attempt to tighten immigration regulations, Congress passed the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"), which, in part, stripped federal courts of jurisdiction to review "any judgment regarding the granting of relief under . . . [INA § 1255(a)]" and any "decision or action of the Attorney General the authority for which is specified under this title to be in the discretion of the Attorney General." IIRIRA, Pub. L. No. 104-208, § 306, 110 Stat. 3009 (1996) (codified at 8 U.S.C. § 1252(a)(2)(B)). IIRIRA was further amended in 2005 to make clear that INA § 1152(a)(2)(B) applied to denials of discretionary relief "regardless of whether the judgment, decision, or action is made in removal proceedings." Real ID Act of 2005, Pub. L. No. 109-13, § 101(f), 119 Stat. 231 (2005); see also H.R. No. 109-72, at 170 (2005) (Conf. Rep.). The Real ID Act also amended 8 U.S.C. § 1252(a)(2)(B)(ii) to include references to the Secretary of Homeland Security to reflect the

reorganization of the former Immigration and Nationality Service, then a division of the

Department of Justice, into USCIS, currently a division of the Department of Homeland

Security. *Id.*

The jurisdiction-stripping provision of the INA that addresses judicial preclusion of

"discretionary relief" states as follows:

> **(B)     Denials of discretionary relief**
> Notwithstanding any other provision of law (statutory or nonstatutory),
> including section 2241 of Title 28, or any other habeas corpus provision,
> and sections 1361 and 1651 of such title, and except as provided in
> subparagraph (D), and regardless of whether the judgment, decision, or
> action is made in removal proceedings, no court shall have jurisdiction to
> review –
>> (i)   an judgment regarding the granting of relief under section 1182(h),
>> 1182(i), 1229b, 1229c, or 1255 of this title, or
>> (ii)  any other decision or action of the Attorney General or the
>> Secretary of Homeland Security the authority for which is
>> specified under this subchapter to be in the discretion of the
>> Attorney General or the Secretary of Homeland Security, other
>> than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1152(a)(2)(B).  Most of the arguments raised by Defendants focus on the meaning

and interpretation of this section, which serves as the centerpiece of their motion to dismiss.

## ARGUMENT

**I.      THIS COURT HAS JURISDICTION TO REQUIRE DEFENDANTS TO
ADJUDICATE PLAINTIFFS' ADJUSTMENT OF STATUS APPLICATIONS,
WHICH HAVE BEEN PENDING MORE THAN FOUR YEARS.**

Defendants call into question this Court's jurisdiction to require them to perform

statutorily-mandated tasks they have neglected here for more than four years.  Their

jurisdictional challenge must fail because two statutes confer jurisdiction in such cases and no

statute expressly bars this Court from ordering Defendants to discharge such a duty or otherwise

strips the Court of jurisdiction to grant such relief.  Federal question jurisdiction is vested under

the Administrative Procedure Act ("APA") and the Mandamus Act.  Further, limitations on

judicial review under INA § 1252(a)(2)(B) are confined specifically to any "judgment," "decision," or "action" that has been committed to agency discretion, but do not extend to an agency's failure to act or to adjudicate Plaintiffs' applications within a reasonable period of time.

A.    **There Is A Split Of Authority In the Burgeoning Case Law Regarding The Dispute Over Subject Matter Jurisdiction.**

The issues presented by this case have been the subject of a mushrooming number of lawsuits filed throughout the United States in recent years, owing to a the heightened sense of frustration generated by long-pending I-485 applications. The government has adopted an unyielding policy of moving to dismiss such claims in hopes of avoiding judicial scrutiny into the merits of the allegations made by aliens forced to wait indefinitely for a decision on their applications for adjustment of status. As a result, numerous district courts have been called upon to decide the very same issues raised by Defendants in their pending motion to dismiss here. Three cases have been decided recently in this judicial district and countless others have been the subject of rulings by district courts elsewhere. Before launching into our arguments on these matters, we briefly survey the evolving state of the law on the issue of jurisdiction, starting with the rulings from this Court.

The first decision was issued at the end of August 2007. In that case, Judge Sullivan held that 8 U.S.C. § 1252(a)(2)(B)(ii) "does not bar judicial review of the pace of application processing or the failure to take action." *Liu v. Novak*, 509 F. Supp. 2d 1, 5 (D.D.C. 2007). The Court acknowledged the split of authority on the question and sided with the significant number of district courts that have exercised subject matter jurisdiction and adjudicated such claims. The Court recognized that while INA § 1252(a)(2)(B)(ii) deals with discretionary authority to adjudicate I-485 applications, it does not specifically include the pace of processing within the discretion granted by Congress. *Id.* at 6. The Court noted that a

contrary reading "would render toothless all timing restraints, including those imposed by the APA…[and s]uch a result would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters." *Id*. (internal quotation marks omitted). In analyzing the statutory scheme, Judge Sullivan noted several factors in support of the holding: (1) INA § 1252(a)(2)(B)(ii) only applies to a decision or action by DHS, not to a failure to adjudicate; (2) INA § 1252(a)(B)(ii) does not apply to all discretionary decisions, but only where discretionary authority is specified; and (3) there is a presumption of finding in favor of jurisdiction to consider the plaintiff's claim. *Id*. at 6-7. Finally, Judge Sullivan found that jurisdiction vested in the APA, and that the four-year delay in processing the Plaintiffs' applications in that case was unreasonable. *Id.* at 10.

Next came *Luo v. Keisler,* decided by Judge Leon in November, a few months after *Liu* was decided. __ F. Supp. 2d ___, C.A. No. 07-0395, 2007 WL 3357241 (D.D.C. Nov. 14, 2007). No mention is made of *Liu,* as Judge Sullivan's ruling evidently was not brought to the attention of Judge Leon. *Luo* relies heavily on *Safadi v. Howard,* 466 F. Supp. 2d 696 (E.D. Va. 2006). Following *Safadi*, Judge Leon determined that the plain meaning of the word "action" in INA § 1252(a)(2)(B)(ii) includes the pacing of the adjustment of status process, up to and including adjudication. *Id*. at *2. Further, he reasoned that Congress had not intended for the pace of processing to be subject to judicial review because there were no statutory time limits imposed on DHS during which an adjudication must take place. *Id.* Finally, the Court supported its interpretation with the conclusion that due to national security implications, USCIS is allowed to adjudicate applications only after conducting a background investigation. *Id.*

Finally, in *Orlov v. Howard,* C.A. No. 07-350 (JDB), 2007 U.S. Dist. LEXIS 90147 (D.D.C. Dec. 10, 2007), Judge Bates acknowledged both *Liu* and *Luo,* and agreed with

Judge Leon that no subject matter jurisdiction exists for processing-delay claims.  The Court addressed two issues on this point:  (1) whether the pace of processing falls within the discretion of USCIS; and (2) whether the discretionary pace of processing an application is a "decision or action" under INA §1252(a)(2)(B)(ii).  Judge Bates determined that the pace of processing falls within the discretion of USCIS, comparing 8 U.S.C. § 1447(b) (naturalization statute that imposes a strict time limitation) to 8 U.S.C. § 1255(a) (adjustment of status statute with no time limitation) to support this conclusion.  *Id.* at *11.  Further, the Court relied on 8 C.F.R. § 103.2(b)(18), which allows USCIS to withhold adjudication where there is an ongoing investigation).  *Id.* at *12-13.[3]  The Court also determined that neither the APA nor the Mandamus Act confers subject matter jurisdiction.  *Id.* at *18-23.

Moving beyond this judicial district, it is hardly surprising that courts come down on both sides of these issues, just as the judges in this Court have.  The better reasoned opinions, we submit, have found that jurisdiction exists under either the APA or the Mandamus Act (or both), and that INA § 1252(a)(2)(B) does not bar judicial review of delay processing claims.  What follows is a representative sampling of cases that support our position on these issues, although there are many more cases, including others cited in the arguments that follow.  *E.g., Iddir v. INS*, 301 F.3d 492 (7th Cir. 2002) (INA does not bar judicial review of the pace of adjudicating adjustments of status; mandamus jurisdiction lacking where statutory authorization for program has expired); *Montero-Martinez v. Ashcroft*, 277 F.3d 1137 (9th Cir. 2002) (INA § 1252(a)(2)(B)(i) precludes judicial review only in the case of discretionary *final* determinations but not other matters involving discretionary judgment); *Saleem v. Keisler*, 06-C-712-C, 2007 U.S. Dist. LEXIS 80044 (W.D. Wisc. Oct. 26, 2007) (INA does not preclude judicial review and

---

[3]    That provision deals with an exception to the normal adjudication process, one not invoked here and thus not applicable to this case.

subject matter jurisdiction was proper under the APA); *Tang v. Chertoff*, 493 F. Supp. 2d 148 (D.

Mass. 2007) (same); *Linville v. Barrows*, 489 F. Supp. 2d 1278 (W.D. Okla. 2007) (same); *Song*

*v. Klapakas*, No. 06-05589, 2007 U.S. Dist. LEXIS 27203 (E.D. Pa. Apr. 12, 2007) (INA does

not preclude judicial review and subject matter jurisdiction was proper under the APA and

Mandamus Act); *Haidari v. Frazier*, C.A. No. 06-3215 (DWF/AJB), 2006 U.S. Dist. LEXIS

89177 (D. Minn. Dec. 8, 2006) (same); *Duan v. Zamberry*, C.A. No. 06-1351, 2007 U.S. Dist.

LEXIS 12697 (W.D. Pa. Feb. 23, 2007) (same); *Xu v. Chertoff*, No. 07-50, 2007 U.S. Dist.

LEXIS (D.N.J. July 11, 2007) (same); *Gershenzon v. Gonzalez*, No. 07-109, 2007 U.S. Dist.

LEXIS 68600 (W.D. Pa. Sept. 17, 2007) (same); *Yang v. Gonzales*, No. 2:07-cv-050, 2007 U.S.

Dist. LEXIS 42143; (S.D. Ohio June 11, 2007) (INA does not preclude judicial review and

subject matter jurisdiction was proper under the Mandamus Act).

As noted previously, with respect to adjustment of status, other courts have

concluded that the pace of adjudication lies outside the jurisdiction of the Mandamus Act and the

APA, particularly given the bar for various discretionary matters under INA § 1252(a)(2)(B).

Although decisions reaching this conclusion are not controlling here, have generated criticism,

and, we submit, lack the persuasive force of those cited above, we nonetheless identify

representative contrary precedent in the event the cases may assist the Court in evaluating the

conflicting views on this issue. *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006) (no

jurisdiction under the APA, Mandamus Act, and INA to compel the adjudication of a pending

adjustment of status application); *Grinberg v. Swacina*, No. 06-22593 2007 WL 840109 (S.D.

Fla. March 20, 2007) (same); *Elzer v. Mueller*, No. 07-01666, 2007 WL 1221195 (E.D. Pa. Apr.

23, 2007) (same); *Sharkey v. Ganter*, No. 05- 5577 2006 WL 177156 (S.D.N.Y. Jan. 24, 2006)

(no subject matter jurisdiction under the INA, Federal Question Statute, APA, and Mandamus

Act to compel restoration of permanent residency status); *Sozanski v. Chertoff*, No. 06-0993-N, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (no jurisdiction under the Mandamus Act and APA to compel the FBI to complete name check); *Shalabi v. Gonzales*, No. 06-866, 2006 WL 3032413 (E.D. Mo. 2006) (no subject matter jurisdiction to compel the FBI to complete criminal background check); *Karan v. McElroy*, No. 02 CIV. 6678, 2003 WL 21209769 (S.D.N.Y. 2003) (no subject matter jurisdiction under APA and Mandamus Act because adjustment of status is a discretionary determination); *Zheng v. Reno*, 166 F. Supp. 2d 875 (S.D.N.Y 2001) (no jurisdiction to compel USCIS to schedule an interview in connection with an adjustment of status application because such action is discretionary); *Sadowski v. INS*, 107 F. Supp.2d 451, 453 (S.D.N.Y. 2000) (no jurisdiction to compel INS to act under Mandamus Act because adjustment of status solely within the discretion of INS); *Li v. Chertoff*, 482 F. Supp. 2d 1172 (S.D.Cal 2007) (no subject matter jurisdiction under Mandamus Act and APA because judicial review barred by INA and pace of processing adjustment of status applications is discretionary).

> **B.     This Court Has Subject Matter Jurisdiction To Adjudicate Plaintiffs' Claims Under The Administrative Procedure Act And The Mandamus Act.**

The Complaint alleges there is federal question jurisdiction under 28 U.S.C. § 1331 for this action in conjunction with the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"), and the Mandamus Act, 28 U.S.C. § 1361. Compl. ¶ 2 (Dkt. #1). Defendants deny this allegation and have moved for dismissal on the ground that federal question jurisdiction cannot be invoked here because neither statute confers jurisdiction to adjudicate Plaintiffs' claim for unreasonable delays in processing their I-485 applications. Because these jurisdictional arguments are unavailing, Defendants' motion must be denied.

1.    **There is federal question jurisdiction under the APA for Plaintiffs' claims**.

Section 702 of the APA authorizes suits against federal agencies by persons adversely affected by "agency action within the meaning of a relevant statute." 5 U.S.C. § 702. That right of action is not confined solely to affirmative acts, but applies as well to an agency's failure to act, given that "agency action" under the APA includes a "failure to act." 5 U.S.C. § 551(13). In such cases, a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA also requires an agency "within a reasonable time" to "proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Finally, judicial review of agency action under the APA is precluded where another statute "preclude[s] judicial review," or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

The APA thus grants authority to adjudicate Plaintiffs' claims where, as here, the agency has failed to act on their applications for more than four years, an unreasonably long time, and no barriers exist to judicial review. In combination with federal question jurisdiction under 28 U.S.C. § 1331, the authority conferred under the APA "vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld." *Liu v. Novak,* 509 F. Supp. 2d at 8 (*citing Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 336 F.3d 1094, 1099-1100 (D.C. Cir. 2003) ("the district court had jurisdiction under 28 U.S.C. § 1331 . . . to determine whether the [agency] was in violation of § 555(b), and, if it was, to issue an appropriate order pursuant to § 706")).

Defendants contend that there is no jurisdiction under Section 701(a) of the APA because the INA bars any review of the adjudication process for adjustment of status applications and the agency action at issue here is discretionary. Mem. at 14-15. Defendants also assert (*id.*

at 15-16) that "no meaningful standard" can be applied to the processing of status adjustment applications because no specific time period is set under the INA, thereby precluding judicial review under the teaching of *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  Neither theory stands up under scrutiny or precludes this Court from invoking APA jurisdiction in this case.

First, as explained in considerable detail in part 5 below, nothing in the INA grants discretion over the pace of application processing for adjustments of status, or empowers the agency to fail to process an application.  Moreover, no INA provision divests a court from jurisdiction to determine whether the pace for any particular application violates APA § 555(b)'s "reasonable time" requirement.  Rather, as explained below, discretion and preclusion of judicial review under the INA are narrowly confined to other matters that are not raised by Plaintiffs' complaint and for which Plaintiffs seek no relief.  Accordingly, the INA erects no bar to judicial review here under APA § 701(a).  *Liu v. Novak*, 509 F. Supp. 2d at 8-9; *Duan*, U.S. Dist. LEXISs 12697, at *12-13; *Saleem*, 2007 U.S. Dist. LEXIS 80044, at *26.

Defendants' *Heckler* argument fares no better.  The inaction held to be nonreviewable in that case was a determination by the FDA not to prevent the use of unapproved drugs in lethal injections, a matter the Court likened to a prosecutor's decision not to prosecute or enforce.  470 U.S. at 831-32.  That is hardly the context out of which Plaintiffs' claim arises, where the "inaction" complained of has nothing whatever to do with prosecutorial judgment or enforcement.  Recognizing that there are important differences between prosecutorial discretion as addressed in *Heckler* and an agency's inaction in other contexts, the D.C. Circuit has given *Heckler* a narrow reading in cases involving agency inaction.  *See, e.g., Sierra Club v. Thomas*, 828 F.2d 783, 794 (D.C. Cir. 1987) (allowing review where "the pace of the agency decisional

process lags unreasonably"); *Her Majesty the Queen in Right of Ontario v. EPA,* 912 F.2d 1525, 1531 (D.C. Cir. 1990).

Judicial review is especially warranted in circumstances where, as here, "the statutory duty involved . . . does not specify what course of action shall be taken[, but] regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice." *Sierra Club*, 828 F.2d at 794. Following these principles, courts have rejected arguments made by the government to the effect that *Heckler* and its progeny preclude review of the dilatory pace of processing adjustment of status applications under the INA, the very argument made by Defendants here. *E.g., Liu v. Novak,* 509 F. Supp. 2d at 9; *Tang,* 493 F. Supp. 2d at 155; *Saleem,* 2007 U.S. Dist. LEXIS 80044, at *27.

Defendants' *Heckler* argument falls wide of the mark because APA does provide a "meaningful standard" by which to judge the pace of processing an adjustment of status application. As noted above, the APA requires an agency "within a reasonable time" to "conclude a matter presented to it." 5 U.S.C. § 555(b). Furthermore, the D.C. Circuit has fashioned a multi-factor analysis for district courts to follow in applying this "meaningful standard" to claims of unreasonable delay under the APA. *Telecomms. Research & Action Ctr. v. FCC,* 750 F.2d 70, 80 (D.C. Cir. 1984). Defendants contend that only a statutory time period for action can provide a meaningful standard for judicial review. Mem. at 17. The authorities on which they rely are inapposite, however, because there is no holding that a statutory time period is necessary before a court has APA jurisdiction to adjudicate unreasonable delay claims.

Finally, Defendants misapprehend the nature of their burden when they erroneously criticize Plaintiffs for having "cited no statute or regulation constraining the FBI's discretion" in performing background checks. Mem. at 17. In light of the preceding analysis of

judicial review under the APA, it falls to Defendants to establish a bar to judicial review of the FBI's failure to complete the background checks on Plaintiffs. No statutory or regulatory authority is cited by Defendants for the proposition that the FBI's failure to act is shielded from judicial review. Further, it is abundantly clear that the FBI has a mandatory duty to complete background checks. *Kaplan v. Chertoff,* 481 F. Supp. 2d 370, 400-01 (E.D. Pa. 2007). Defendants do not contend otherwise. The mandatory nature of the duty removes Defendants' inaction in this case from the rule in *Heckler* and its progeny because in those cases the agency was not obligated to perform the act for which judicial review was sought.

It follows that Defendants must act in a reasonable time pursuant to APA § 555(b):

> Were it otherwise, the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic – the CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA.

*Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004); *accord, Kaplan,* 481 F. Supp. 2d at 401 ("the APA requires that the FBI complete the criminal background checks in a reasonable amount of time"); *Liu v. Novak,* 509 F. Supp. 2d at 9 ("the Court does have jurisdiction over plaintiff's APA claim that defendants have unreasonably delayed adjudicating his application").

2.    **The Mandamus Act provides an alternative basis for exercising subject matter jurisdiction in this case.**

The Mandamus Act vests district courts with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A party seeking mandamus must satisfy three requirements: (1) a clear right to relief, (2) a clear, nondiscretionary duty to

act on the part of the defendant, and (3) no other adequate remedy. *Heckler v. Ringer*, 416 U.S. 602, 617 (1984).

Here, Plaintiffs' right to adjudication of their I-485 applications in a reasonably timely fashion is established by APA § 555(b). Defendants have a nondiscretionary duty to adjudicate Plaintiffs' applications under INA § 1255(a) and the regulations promulgated under that statute. *Liu v. Chertoff,* No. 06-2808, 2007 U.S. Dist. LEXIS 50173, at *9 (E.D. Cal. July 11, 2007); *Quan v. Chertoff*, No 06-7881, 2007 U.S. Dist. LEXIS 44081, at *7 (N.D. Cal. June 7, 2007); *Singh v. Still,* 470 F. Supp. 2d 1064, 1068 (N.D. Cal. 2007). Finally, without relief from this Court, Plaintiffs have no reason to believe their applications will be timely adjudicated, as they have already been pending for more than four years. Indeed, Mr. Cannon, Defendants' declarant and chief of the FBI's national name check program, all but admits that there is no end in sight. Cannon Decl. ¶ 39 at 14-15 ("no estimate can be made as to when the plaintiffs' cases will be reached by NNCPS staff [sic], nor can any reliable estimate be made as to how long it will take to complete the review once it has begun") (Ex. 2 to Mem.).

Defendants challenge two of the requirements for mandamus, contending that "Plaintiffs lack a clear right to immediate adjudication … and Defendants have no clear mandatory or ministerial obligation to adjudicate the applications or complete background checks within a particular time frame." Mem. at 13. Neither proposition has merit.

Defendants' first argument mischaracterizes the relief Plaintiffs seek and ignores the "reasonable time" requirement of APA § 555(b). Plaintiffs do not demand "immediate" actions on their applications; rather, they seek to have their applications adjudicated in a timely fashion in recognition of the four-year delay they already have endured. Plaintiffs' are entitled under the APA to have their applications processed "within a reasonable amount of time," and

this Court has authority to enforce that requirement by fashioning appropriate relief.

Accordingly, Plaintiffs have a clear right to the relief they seek. *Tang,* 439 F. Supp. 2d at 155;

*Haidari,* 2006 U.S. Dist. LEXIS 89177, at *9; *Kim,* 340 F. Supp. 2d at 391.

Defendants' second argument contradicts the weight of authority concerning the

nature of the statutory duty to adjudicate adjustment of status requests. The thrust of the

argument is that INA § 1255(a) commits decisions to grant or deny I-485 applications to agency

discretion. Mem. at 13. Herein lies the fallacy of this argument: Whatever discretion the

agency may have in making such decisions, Plaintiffs have not asked this Court to intervene in

decisions on the merits of their applications. Rather, Plaintiffs demand only that a decision be

made and, with respect to that demand, the duty to adjudicate adjustment of status applications is

not discretionary. Numerous courts so hold.[4]

Defendants rely on several district court decisions that have reached the opposite

conclusion in rejecting mandamus jurisdiction to compel adjudication of adjustment of status

requests. Mem. at 13-14. "The weight of authority, however, supports a finding that Defendants

have a non-discretionary duty to process or adjudicate an adjustment application; that duty

supports a mandamus action." *Duan*, 2007 U.S. Dist. LEXIS 12697, at *11 (citing cases).

### C.   No Limitation Under The INA Bars This Court From Adjudicating Plaintiffs' Processing-Delay Claims.

Defendants contend that two provisions of § 1252(a)(2)(B) of the INA preclude

the Court from exercising jurisdiction in this action. Because they rely on statutory language that

---

[4]   *E.g.*, *Duan,* 2007 U.S. Dist. LEXIS 12697, at *11; *Haidari*, 2006 U.S. Dist. LEXIS 89177, at *10-11; *Valenzuela v. Kehl*, No. 3:05-CV-1764-BF, 2006 U.S. Dist. LEXIS 61054, at *19-20 (N.D. Tex. Aug. 28, 2006); *Aboushaban v. Mueller*, No. C 06-1280, 2006 U.S. Dist. LEXIS 81076, at *4 (N.D. Ca. Oct. 24, 2006); *Elkhatib v. Butler*, 04-22407-CIV, 2005 U.S. Dist. LEXIS 22858, at *4 (S. D. Fla. June 6, 2005); *Yu v. Brown*, 36 F. Supp. 2d 922, 928 (D.N.M. 1999); *Paunescu v. INS*, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999).

does not mention the specific claims made by Plaintiffs here, their argument necessarily seeks to broaden the scope of the statutory bar to include this case.  As demonstrated below, their argument falls flat because the INA does not prohibit courts from deciding processing-delay claims.

As a threshold matter, it is settled law that before federal courts can be divested of jurisdiction, there must be "clear and convincing evidence" that Congress intended to preclude judicial review.  *Bd. of Governors of Fed. Reserve Sys. v. MCorp Financial, Inc.,* 502 U.S. 32, 44 (1991).  Imposing such a heavy burden is entirely appropriate where agency decision-making, or the lack thereof, is at issue because, as the Supreme Court instructs, there is a "strong presumption in favor of judicial review of administrative action," even where Congress places limits on the scope of judicial review.  *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 498 (1991) (upholding subject matter jurisdiction to decide challenges to agency action despite INA provision expressly restricting judicial review only to exclusion or deportation orders).  Interpreting limitations on the scope of judicial review under IIRIRA, in particular, requires "a close textual reading" of the statute because "restrictions on jurisdiction should conform tightly to the precise language chosen by Congress."  *Prado v. Reno,* 198 F.3d 286, 290 (1st Cir. 1999) (citing *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 119 S.Ct. 936, 943-45 (1998)).

As demonstrated below, application of these principles to the express statutory language at issue here confirms that there is subject matter jurisdiction to adjudicate Plaintiffs' claims.  Congress has not divested this Court of jurisdiction to decide whether the pace of processing Plaintiffs' I-485 applications is unreasonably slow, and, if so, to compel timely completion of the process.

1.   **"Any judgment" under § 1252(a)(2)(B)(i) refers to final discretionary determinations regarding granting of relief, not to the pace of processing adjustment of status applications.**

The first jurisdictional restriction under § 1252(a)(2)(B), titled "Denials of Discretionary Relief," bars judicial review of "any judgment regarding the granting of relief" under, among other things, § 1255(a) adjustment of status applications.  Given that Plaintiffs' applications have neither been granted nor denied, this restriction does not deprive this Court of jurisdiction to compel the relief sought by Plaintiffs for Defendants' failure to decide after four years.  The limitation, by its terms, is confined to ultimate discretionary decisions in the nature of a final "judgment," not to routine processing tasks that may be undertaken to enable the agency to arrive at such a judgment.  *Iddir v. INS,* 301 F.3d 492, 497 (7th Cir. 2002) (concluding that § 1252(a)(2)(B)(i) "only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections, including section 1255").  *Tang,* 493 F. Supp. 2d at 151-152; *Cao v. Upchurch,* 496 F. Supp. 2d 569, 572 (E.D. Pa. 2007); *Paunescu,* 76 F. Supp. 2d at 900; *Montero-Martinez v. Ashcroft,* 277 F.3d 1137 (9th Cir. 2002) (concluding that § 1252(a)(2)(B)(i) eliminates jurisdiction only over decisions to grant relief that involve the exercise of discretion).  Thus, § 1252(a)(2)(B)(i) does not bar judicial review of all final agency determinations regarding adjustment of status, but is limited to only those provisions involving discretionary determinations over the granting of relief.  *Montero-Martinez,* 277 F.3d at 1144.  ("[W]hen Congress really wanted to preclude review of all decisions . . . regarding discretionary relief, it knew how to do so in unambiguous terms.").

This construction derives from a "close textual reading" of the INA. The statute employs the term "judgment" no fewer than eight times to refer to judgments in the nature of

final orders (such as judgments entered by a court)[5] and no fewer than five times to refer to the

exercise of discretion or a discretionary determinations.[6] Given the specific contexts in which the

statute employs the term "judgment," including both final rulings and exercise of discretionary

judgment, there is good reason to believe that Congress likewise intended the term "judgment" in

§ 1252(a)(2)(B)(i) to mean final discretionary determinations involving adjustment of status

applications, rather than determinations based on other grounds. *Montero-Martinez*, 277 F.3d at

1143. Furthermore, the heading of § 1252(a)(2)(B) explains that it is directed to "Denials of

Discretionary Relief," thus lending further support for the proposition that matters not involving

the exercise of discretion fall outside its scope. *See Bondarenko v. Chertoff*, 07-00002, 2007

U.S. Dist. LEXIS 67143, *11 (W.D.N.Y. Sept. 8, 2007); *Iddir*, 301 F.3d at 497*; Almendarez-*

*Torres v. United States*, 523 U.S. 224, 234 (1998) (concluding that statutory titles and headings

are "tools available for the resolution of a doubt about the meaning of a statute").

Unburdened by any authority in support of their stilted reading of the statute,

Defendants' simply assert that § 1252(a)(2)(B)(i) bars review of "USCIS's judgment that its

adjudication of Plaintiffs' application cannot be completed until the FBI has completed

processing of the background checks." Mem. at 10. Aside from ignoring pertinent case law

(such as the decisions cited above) as well as the express language of the statute, Defendants'

---

[5]    *E.g.,* 8 U.S.C. § 1101(a)(48)(A) ("formal judgment of guilt"); § 1158(b)(2)(A)(ii)
("convicted by a final judgment"); § 1227(a)(2)(D) ("judgment on such conviction");
§ 1229a(c)(3)(B)(i) ("record of judgment and conviction"); § 1231(b)(3)(B)(ii) ("convicted
by a final judgment"); § 1324b(i)(2) ("judgment shall be final"); § 1451(f) ("court in which
such judgment or decree is rendered"); § 1503(a) (right to file action "for a judgment
declaring him to be a national of the United States").

[6]    *E.g.*, 8 U.S.C. § 1103(a)(7) ("[The Secretary of DHS] may, whenever in his judgment such
action may be necessary'); § 1153(d)(5) ("Supervisor - . . .requires the use of independent
judgment"); § 1226(e) ("The Attorney General's discretionary judgment regarding the
application of this section"); § 1252(b)(4)(D) ("The Attorney General's discretionary
judgment whether to grant relief"); § 1537(b)(2)(A) ("in the judgment of the Attorney
General").

interpretation of what Congress intended here by the term "judgment" misses the point. This lawsuit complains about Defendants' unreasonable delay in adjudicating Plaintiffs' change of status applications, not about the particular sequence of steps that have been developed to process applications. Accordingly, even if waiting for the completion of FBI background checks were found to be a "judgment" insulated from judicial review under § 1252(a)(2)(B)(i) – a proposition Plaintiffs dispute – such a finding would not divest this Court of jurisdiction because Plaintiffs have not asked the Court to review it. Rather, the central issue here is bureaucratic inertia run amok, a matter as to which the present record, including Defendants' lengthy declarations, gives every indication that no one has made a "judgment" to keep Plaintiffs waiting indefinitely.

> **2.    "Any other decision or action" under § 1252(a)(2)(B)(ii) does not apply to "inaction" or to the pace of adjudication because discretionary authority for such matters has not been specified by Congress.**

The second proviso of § 1252(a)(2)(B) is a catchall provision that bars judicial review of certain other matters that the INA commits to the discretion of the Attorney General or Secretary of Homeland Security.[7]  Authority to adjust an alien's status is one of the powers conferred under the INA to the Secretary of Homeland Security. 6 U.S.C. § 271(b).  Nowhere does the INA expressly provide that a "failure to act" on an adjustment of status application or the "pace" of consideration of such an application falls outside the subject matter jurisdiction of a federal court.  Rather, for a particular matter to be insulated from judicial review under

---

[7]    Section 1252(a)(2)(B)(ii) states in pertinent part as follows:

> [N]o court shall have jurisdiction to review . . . (ii) any other *decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is *specified* under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." (Emphasis added).

§ 1252(a)(2)(B)(ii), it must constitute a "decision" or "action" as to which discretionary authority has been "specified" under the INA to be exercised by the named government official.  Because these terms establish the metes and bounds of the statute's jurisdictional bar, their meaning is essential for a correct determination of whether or not the statute precludes judicial review of a particular issue.

At the outset, it is significant that the INA's restriction on judicial review is confined only to any "decision or action," in sharp contrast to the issue presented by this case: Defendants' failure to make a decision or take action on Plaintiffs' I-485 applications.  Because Plaintiffs here are asking this Court to rectify years of inaction, not to review particular decisions or actions, the INA's prohibition against judicial review does not even come into play with respect to the issues Plaintiffs have raised.  *Paunescu,* 76 F. Supp. 2d at 900 ("Plaintiffs do not ask this court to 'review' a governmental action, but to examine and rectify a gross inaction."). In short, "[r]eview over the lack of action is not barred" under the second proviso of § 1252(a)(2)(B).  *Liu,* 509 F. Supp. 2d at 6; *accord, Iddir,* 301 F.3d at 497-98 (concluding that INA's prohibition against review of any "judgment" and "decision or action" does not bar jurisdiction in cases of administrative delay).

Further, the INA's jurisdictional bar does not apply to every conceivable discretionary decision, but is limited only to those for which authority is "specified" to be discretionary under the applicable provisions of the INA.  Accordingly, the restriction on judicial review applies to the "narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion." *Alaka v. Attorney Gen. of the U.S.,* 456 F.3d 88, 95 (3d Cir. 2006).  As a result, "the relevant jurisdictional bar applies *only* when the discretion is specified in the statute, not in every instance

where the Attorney General has the authority to apply the law to the facts of a case." *Id.* at 96 n.12 (emphasis in original).

One such provision is § 1255(a), which provides that an alien's status "may be adjusted by the Attorney General, in his discretion,"[8] without specifying anything more.  8 U.S.C. § 1255(a).  By its terms, § 1255(a) does not specify any discretion over the pace of processing adjustment of status applications.  That is not to say that processing applications is totally devoid of any discretionary considerations.  However, the omission of such considerations from § 1255(a) excludes the issue of pace from the jurisdictional bar of § 1252(a)(2)(B)(ii):

> Although the speed of processing may be "discretionary" in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, it is not discretionary in the manner required by the jurisdiction-stripping language of the IIRIRA.

*Duan,* 2007 U.S. Dist. Lexis 12697, at *7.[9]

Finally, if any lingering doubt remains concerning the intent of Congress in enacting this jurisdictional bar, the doubt should be resolved in favor of adjudicating Plaintiffs' claims.  This is so for two reasons.  First, "statutory ambiguities in immigration laws are resolved in favor of immigrants."  *Liu v. Novak,* 509 F. Supp. 2d at 7 (*citing INS v. Cardozo-Fonseca,* 480 U.S. 421, 449 (1987)); *accord Iddir,* 301 F.3d at 497 ("we ordinarily resolve ambiguities in favor of the aliens and find jurisdiction to hear the grievance").  In addition, as explained above,

---

8    This authority has been transferred to the Secretary of Homeland Security.  6 U.S.C. § 271(b).

9    *Accord, Iddir,* 301 F.3d at 497-98; *Liu v. Novak,* 509 F. Supp. 2d at 7; *Gershenzon,* 2007 U.S. Dist. LEXIS 68600, at *8; *Elmalky v. Upchurch*, C.A. No. 3:06-cv-2359-B, 2007 U.S. Dist. LEXIS 22353, at *16-17 (N.D. Tex. Mar. 28, 2007).  Thus, "[w]hile 8 U.S.C. § 1255(a) specifically places the decision of whether to adjust status in the discretion of the Attorney General, it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let such a petition languish indefinitely."  *Cao,* 496 F. Supp. 2d at 573.  *See also Saleem,* 2007 U.S. Dist. LEXIS 80044, at *14; *Bondarenko*, 2007 U.S. Dist. LEXIS 67143, at * 12-13.

evidence of congressional intent to limit federal jurisdiction must be "clear and convincing." That standard simply cannot be met here absent a clear jurisdictional bar for claims based on the failure of governmental agencies to perform, in a reasonably timely fashion, duties mandated by Congress. *Saleem,* U.S. Dist. LEXIS 80044, at *12 (holding that jurisdiction is presumed "unless Congress has made it clear that it has carved out an exception").

Defendants, in contrast, read INA's statutory bar far too broadly. They contend that, by specifying discretionary authority to adjust status, Congress clearly intended that specification to extend to every step that might be taken by the agency to determine whether an adjustment should be made, including "when, whether, and how to grant an adjustment application." Mem. at 10. They point to the absence in § 1255(a) of any time frame for adjudicating applications as further evidence that this subject is insulated from judicial review. *Id.* The fallacy of Defendants' argument is that it reads into the statute nonreviewable discretion that simply is not found there.

The jurisdictional bar is triggered only for matters "specified" in the INA, which, in this case, is confined to adjustments of status under § 1255(a), nothing more. As noted above, Congress has not specified the pace of application processing as coming within the scope of discretionary authority subject to the § 1252(a)(2)(B)(ii) jurisdictional bar. Thus, rather than bolster Defendants' argument, the absence of a processing timeframe in the INA has just the opposite effect. *Saleem,* 2007 U.S. Dist. LEXIS 80044, at *12 (rejecting the inference that review is barred "simply from the absence of a statutory deadline for making a decision"). As a result, Defendants must search elsewhere for support for their expansive reading.

First, they mischaracterize § 1255(a), suggesting that it includes "discretion over the process of adjudicating an I-485 application," Mem. at 10, thus ignoring the words of the

statute itself, which provide only that an alien's status "may be adjusted," without any mention of the process leading to an adjustment. Then, in a stunning sleight of hand, Defendants urge that this non-existent discretion over the entire adjudication process "necessarily extends" to the pace of application processing. *Id.* To argue, as Defendants do, that discretionary authority has been specified for the entire application process – on the ground that the term "action" includes every step the agency takes or fails to take – requires a giant leap. Indeed, "it would require an Orwellian twisting of the word [action] to conclude that it means a failure to adjudicate." *Saleem*, 2007 U.S. Dist. LEXIS 80044, at *11. Because the premise of the argument finds no support in the text of the statute, the logical conclusion Defendants seek to draw from it has no foundation. It cannot stand.

Defendants rely heavily on several decisions (Mem. at 10-11) that construe the word "action" in § 1252(a)(2)(B)(ii) to mean "*any* act or series of acts" within the adjustment of status process. *Safadi,* 466 F. Supp. 2d at 699; *accord Luo v. Keisler*, 2007 WL 3357241 at *2; *Grinberg v. Swacina,* 478 F. Supp. 2d 1350, 1353-54 (S.D. Fla. 2007). Each of these decisions makes the same error of logic, concluding that Congress must have meant to specify the entire process of deciding an adjustment application, on the theory that § 1255(a) places no limits on the agency's discretion to adjust status. This reasoning is flawed and fundamentally at odds with the statute.

By requiring that an "action" be "specified" to trigger the jurisdictional bar, Congress took pains to make clear that the statute itself must specify the action as discretionary. *See Tang,* 493 F. Supp. 2d at 152-54. The plain language of § 1252(a)(2)(B)(ii) is not an invitation to draw inferences from the absence of any limits on discretionary authority. *Saleem,* 2007 U.S. Dist. LEXIS 80044, at *12 ("it is inappropriate to infer a congressional intent to

remove jurisdiction simply from the absence of a statutory deadline"). Rather, for jurisdiction, to be precluded, the text of the statute makes it necessary to show that the actions Congress specified are the very ones under attack. Because § 1255(a) is silent on the pace of processing, the matter under attack here, that subject is not subject to the jurisdictional bar. *E.g., Tang,* 493 F. Supp. 2d at 153-54*; Duan,* 2007 U.S. Dist. Lexis 12697, at *9; *Liu v. Novak,* 509 F. Supp. 2d at 7.

Furthermore, Defendants' expansive construction of the jurisdictional bar has not been adopted by appellate courts that have reviewed discretionary rulings by immigration judges on preliminary matters before finally deciding whether to grant or deny relief under the INA. If Defendants' construction were correct, courts would decline to review rulings on such procedural matters for lack of jurisdiction. But courts have granted review and reached the merits. *E.g.*, *Sanusi v. Gonzales,* 445 F.3d 193, 198-99 (2d Cir. 2006); *Abu-Khaliel v. Gonzales,* 436 F.3d 627, 623-34 (6th Cir. 2006); *Zafar v. U.S. Attorney Gen.,* 426 F.3d 1330, 1334-35 (11th Cir. 2005). Similarly, the Ninth Circuit has concluded that § 1252(a)(2)(B)(ii) does not apply to all "discretionary decisions" within the ambit of matters delegated under the INA, but only to those matters expressly "specified" under the INA to be discretionary. *Spencer Enters. v. United States,* 345 F.3d 683, 689 (9th Cir. 2003) (relying on a "well-established canon of statutory interpretation," the court reasoned that, because Congress established the § 1252(a)(2)(B)(ii) bar with words different from those used to refer to "discretionary decisions" in IIRIRA's transitional rules, the "difference in language is legally significant," showing Congress intended a narrower construction). Because Defendants' jurisdictional theory is at odds with these appellate decisions and the many district court decisions cited above, it should be rejected here.

## II.   BECAUSE PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF UNDER THE APA AND THE MANDAMUS ACT, DEFENDANTS' MOTION TO DISMISS MUST BE DENIED.

To overcome a motion to dismiss under Rule 12(b)(6), a complaint need not provide detailed factual allegations; it need only provide factual allegations "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, ____ U.S. ____, 127 S. Ct. 1955, 1965 (2007).  As demonstrated below, Plaintiffs have put forth sufficient allegations to state a claim for which relief can be granted under the APA.

As alleged in the complaint, Plaintiffs filed applications for adjustment of status with USCIS on June 19, 2003.  (Compl. ¶ 1).  Thus far, Defendants have neither issued a final decision on these applications, nor completed the immigration security background checks on Plaintiff Xin He.  (*Id.*).  Defendants posit that a four-year delay is not unreasonable, Mem. at 20, yet Defendant USCIS told Plaintiffs, in writing, shortly after they filed their applications that "[i]t usually takes 365 to 540 days from the date of this receipt for us to process this type of case."  Notice of Action, INS-Vermont Service Center, July 2, 2003.  Although that estimate was surpassed almost three years ago, neither Defendants nor their declarants offer an explanation for the extraordinary amount of time it has taken to do virtually nothing to complete the adjudication of Plaintiffs' applications.  Defendants' "tomorrow is good enough for us" attitude is plainly out of step with the decisions of federal courts that have decided claims alleging excessive processing delays.  Time and time again, courts have concluded that processing delays on the order of four years – or even shorter periods of time – warrant judicial intervention.[10]

---

[10]    *Liu*, 2007 U.S. Dist. LEXIS 50173, at *14 (2 ½ years); *Okunev v. Chertoff*, No. 07-00417, 2007 U.S. Dist. LEXIS 53161, at *1 (N.D. Cal. July 11, 2007) (3 ½ years); *Singh,* 470 F. Supp. 2d at 1065 (N.D. Cal. 2007) (almost 4 years); *Razaq v. Poulos*, No. 06-2461, 2007 U.S. Dist. LEXIS 770, at *43 (N.D. Cal. 2007) (2 years); *Salehian v. Novak*, No. 06-459,

As explained above, under the APA, an agency must conclude a matter presented to it "within a reasonable time." 5 U.S.C. § 555(b). Defendants' failure to comply with this requirement is the gravamen of Plaintiffs' claims under the APA and the Mandamus Act. While Defendants provide two lengthy declarations in support of their motion, neither of them answers the central question presented by this case: Why has it taken so long to adjudicate these particular applications? Granted, a motion to dismiss is not the time for a defendant to prove his defense on the merits. Before that bridge is crossed, Plaintiffs have a right to look behind Defendants' assertions by taking discovery.[11] Nonetheless, the Court has reason to question why Defendants would prepare extensive declarations on a motion to dismiss, without providing even a colorable explanation for the inordinate delay. *See Liu v. Novak*, 509 F. Supp.2d at 10 (finding that the absence of an explanation of why the plaintiff's name check had not been processed supports a conclusion of unreasonable agency delay where processing had not been completed in four years).

Furthermore, Defendants have done so little thus far that, by their own admission, they can give no assurance that Plaintiff He's security background checks will ever be completed:

---

U.S. Dist. LEXIS 77028, at *4 (D. Conn. Oct. 23, 2007) (2 years); *Liu v. Novak*, 509 F. Supp. 2d at 2 (4 years); *Jones v. Gonzales*, No. 07-20334, 2007 U.S. Dist. LEXIS 45012, at *2 (S.D. Fla. June 21, 2007) (3 years and 2 years); *Tjin-A-Tam v. United States Dep't of Homeland Sec.*, No. 05-23339, 2007 U.S. Dist. LEXIS 17994, at *13 (S.D. Fla. March 9, 2007) (over 3 years); *Tang*, 493 F. Supp. 2d at 150 (4 years); *Haidari*, 2006 U.S. Dist. LEXIS 89177, at *16 (4 years and 6 years); *Li v. Chertoff*, No. 07-50, 2007 U.S. Dist. LEXIS 53309, at *9 (D. Neb. July 19, 2007) (2 years); *Xu v. Chertoff*, 2007 U.S. Dist. LEXIS 50027, at *2 (2 years); *Elhaouat v. Mueller*, No. 07-632, 2007 U.S. Dist. LEXIS 58906, at *2 (E.D. Pa. Aug. 14, 2007) (3 years); *Cao v. Upchurch*, 496 F. Supp. 2d 569, 576 (E.D. Pa. 2007) (4 years); *Duan*, 2007 U.S. Dist. LEXIS 12697, at 1 (16 months); *Valenzuela*, 2006 U.S. Dist. LEXIS 61054, at *24 (approximately 5 years); *Saleem*, 2007 U.S. Dist. LEXIS 80044, at *2 (almost 5 years).

[11]  For this reason, it would be improper for the Court to transfer Defendants' motion into one for summary judgment by relying on Defendants' self-serving declarations. *See Baker v. Henderson*, 150 F. Supp. 2d 13, 16 (D.D.C. 2001).

"until review of each case is undertaken, no estimate for the time required to complete it can even be attempted, no estimate can be made as to when the plaintiff's case will be reached by NNCPS staff, nor can any reliable estimate be made as to how long it will take to complete the review once it has begun." Cannon Decl. ¶ 39 at 14-15 (Ex. 2 to Mem.). Defendants further assert that 68% of name checks conducted by the FBI are returned to USCIS within 48-72 hours and that 90% of all name checks are returned within 30-60 days." *Id.* ¶¶ 13-14.

On the strength of the numerous mandamus cases cited above, a four-year processing delay alone presents sufficient grounds for Plaintiffs to survive Defendants' Rule 12(b)(6) motion to dismiss. The admissions of Defendants' declarants provide further support for the proposition that review by this Court is the only way Plaintiffs can obtain a remedy for these interminable delays.

Finally, Defendants argue that granting relief to Plaintiff would be improper because "[a]llowing any alien that files a lawsuit to leapfrog to the head of the queue would be contrary to [the orderly processing of applications and equal treatment of applicants]." Mem. at 20. This argument is makeweight, as its several glaring defects amply demonstrate. First, this action is not brought by "any alien," but by aliens who have been waiting far longer than the vast majority of I-485 applicants, based on Defendants' own statement of facts. Second, the suggestion that this case should be dismissed to assure an "orderly process" borders on the absurd in the circumstances of the chaotic system described by Defendants declarants, where most background checks are completed in a matter of months, while a few are relegated to the back of the line for years on end. Most important, Defendants readily acknowledge that they have developed their own program for leapfrogging, not the product of judicial intervention, where Defendant USCIS instructs Defendant FBI to "expedite" certain background checks. Walker Decl. ¶¶ 10-11. The

contention that this Court is precluded from doing by judicial decree that which the agency already is doing on its own volition – because that would undermine "orderly processing"– is fanciful on its face.  Defendants' Rule 12(b)(6) motion should be denied.

**III.    VENUE IN THIS COURT IS PROPER AND THUS THIS ACTION SHOULD NOT BE TRANSFERRED TO THE NORTHERN DISTRICT OF TEXAS.**

Plaintiffs filed this action in the District of Columbia because this district is where all but two of the Defendants resides and conducts business.  The only exceptions are the Texas Service Center of Defendant USCIS and its director, Defendant Evelyn Upchurch.  Venue is proper because actions against an officer or employee of the United States or any agency may be brought among other places, in "any judicial district in which . . .  a defendant in the action resides . . . ."  28 U.S.C. § 1391(e).

As the party seeking to transfer this action, Defendants bear the burden of establishing that the transfer is proper. *See, e.g., Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).  Courts have discretion to adjudicate motions to transfer according to case-by-case considerations based on convenience and fairness. *See Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  A court may transfer a case only if the balance of private and public interests weighs in favor of transfer.  *Greater Yellowstone Coalition*, 180 F. Supp. 2d at 127-128. The private-interest factors include:  (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant;  (2) the defendant's choice of forum;  (3) whether the claim arose elsewhere;  (4) the convenience of the parties;  (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the forum; and (6) the ease of access to sources of proof.  *Id.* The public-interest considerations include:  (1) the transferee court's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of

the calendars of the potential transferee and transferor courts; and (3) the local interest in

deciding local controversies at home. *Id*.

A.   **This Judicial District Is a Proper Forum Not Only Because Defendants Reside Here, But Also Because a Substantial Part of the Events or Omissions Giving Rise to the Claim Occurred in the District of Columbia.**

Based on Defendants' declarations, the main cause of the delay in this case is the

failure to complete FBI background checks, which have been pending since July 2003.  Cannon

Decl. ¶ 41.  As Defendants explain the process, Defendant USCIS simply forwards the requests

for background checks to Defendant FBI and then it sits back to await the results.  Walker Decl.

¶ 18.  Because name checks have not been contemplated by the FBI, it is clear that "a substantial

part of the events or omissions" giving rise to the delay in adjudicating Plaintiffs' I-485

applications stem from the operations of the FBI national name check program staff ("NNCPS").

According to its director, Mr. Cannon, NNCPS operates at the FBI headquarters in the District of

Columbia.  Cannon Decl. ¶ 1.  Nothing in Mr. Cannon's declaration suggests that any FBI field

office in Texas or elsewhere is responsible for conducting the name checks for Plaintiffs.  The

fact that the name checks have yet to be completed can be attributed only to events or omissions

at FBI headquarters in this district.

Defendant USCIS has its headquarters in Washington, D.C.  That agency bears

ultimate responsibility for the adjudication of Plaintiffs' applications.  Officials of Defendant

USCIS, including Defendant Emilio Gonzalez, its director, determine priorities, direct

operations, establish procedures, allocate resources, and ultimately are accountable for the

agency's results or lack thereof.  As noted above, Defendant USCIS transferred Plaintiffs' I-485

applications from the Vermont Service Center to its Texas office in **March 2007**.  In light of

Defendants' present motion to transfer venue, that decision is noteworthy for several reasons.

First, the transfer came three and half years after Plaintiffs' applications had been filed in Vermont. The fact that the Vermont Service Center had the file for most of the intervening years significantly undercuts Defendants' contention that "any delay in the processing of [Plaintiffs'] applications concern [the Texas] office." Mem. at 23. Indeed, until quite recently, the Texas Service Center ("TSC") had nothing to do with Plaintiffs' applications and, upon transfer to that office, "TSC suspended its processing," as Ms. Walker acknowledges. Walker Decl. ¶ 18. Of even greater significance, the transfer of Plaintiffs' file to TSC was ordered several months after Plaintiffs' counsel had notified Defendant USCIS, in writing, that legal proceedings would be initiated if the applications were not adjudicated. Thus, when viewed against the backdrop of Defendants' venue motion, the transfer from Vermont to TSC has all the earmarks of an attempt by Defendant USCIS to secure some litigation advantage.

In view of the foregoing facts, it is reasonable to conclude that a substantial part of the events or omissions giving rise to the delay occurred at the FBI and USCIS offices in this judicial district. Therefore, the District of Columbia is a proper forum and the Court must refuse Defendants' invitation to transfer the case elsewhere. *See Ibrahim v. Chertoff,* No. 06cv2071-L (POR), 2007 WL 1558521 (S. D. Cal. May 25, 2007) (refusing to transfer mandamus action because a substantial part of the events or omissions giving rise to the claim occurred in the forum).

In addition, the TSC has merely been the custodian of Plaintiffs' file for the last six months. According to Ms. Walker, all TSC has done with the file during that period of time is to monitor FBI name check results, Walker Decl. ¶ 19, a task that in Plaintiffs' case has been marked by a noteworthy absence of activity. In short, the TSC has done nothing to adjudicate Plaintiffs' applications and has not established any nexus to any "events or omissions" that

caused the inordinate processing delays in this case.  Thus, the Northern District of Texas is not a proper forum.

**B.    The Private and Public Factors Weigh Against Transfer.**

The private factors are most relevant here and they strongly support the decision of Plaintiffs to file this action in this judicial district.  This Court must afford substantial deference to Plaintiffs' choice of forum.  *Greater Yellowstone Coalition*, 180 F. Supp. 2d 128 (and cases cited therein).  Defendants bear a "heavy burden" in asking this Court to reject Plaintiffs' choice of forum.  *Thayer v. Pryor Resources, Inc.*, 196 F. Supp. 2d 21, 35 (D.D.C. 2002).  Although less deference towards a plaintiff's choice of forum is warranted if the forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter, that is not the case here.  As explained above, a substantial part of the events and omissions are attributable to policies and operations carried out at FBI and USCIS headquarters in the District of Columbia.  Indeed, because officials at the FBI and the USCIS are ultimately responsible for the delay in adjudicating Plaintiffs' applications, this jurisdiction has a local interest in resolving this dispute.  Finally, this forum is convenient for Defendants, including those directly involved in the FBI name check program, for purposes of providing evidence relevant to this dispute and of being advised about any orders issued by this Court with which they must comply.

The public factors also do not favor transfer.  The first two factors (familiarity with law and docket congestion) seem equally balanced, as Defendants' own analysis seems to acknowledge.  Mem. at 26.  The third factor (local interest) weighs against transfer as explained above, given the interest of this district in matters concerning polices and operations carried out at FBI and USCIS headquarters with respect to the adjudication of I-485 applications.

Defendants do not dispute that venue is proper in this district. Instead, they rely heavily on *Abusadeh* (Mem. at 22, 23, 26) for their position that venue nonetheless should be transferred. *Abusadeh v. Chertoff*, C.A. No. 06-2014, 2007 WL 2111036 (D.D.C. July 23, 2007). In that case, venue was proper in the Southern District of Texas because both the plaintiff and a defendant – the director of the USCIS Houston office – resided in that district. Furthermore, as the court noted, almost all of the "activity giving rise to [plaintiff's] cause of action" occurred in the Southern District of Texas. *Id.* at *5. The plaintiff alleged that he resides in Houston, Texas, he filed an application for naturalization and was thereafter interviewed at the USCIS office in Texas, he was advised following his interview that a decision on his application could not be made pending a security check, and he was told by the Houston USCIS office that security checks are still pending. *Id.* Finally, a significant consideration in the court's decision to transfer venue was the fact that the plaintiff had filed a previous action in the Southern District, raising the same factual allegations under different legal theories, and brought suit in the District of Columbia only after being denied relief in Texas. *Id.*

*Abusadeh* is obviously distinguishable and offers little guidance here. The TSC had no previous involvement with Plaintiffs' applications until a few months before Plaintiffs' complaint was filed, after Defendant USCIS transferred the file to that center following Plaintiffs' threat of litigation. The TSC has been inactive in the interim with respect to Plaintiffs' applications. Thus, virtually no "activity giving rise to [Plaintiffs'] cause of action" occurred in the Northern District of Texas. Finally, unlike *Abusadeh*, no previous action was brought by Plaintiffs in another judicial district. Defendants' motion to transfer venue should therefore be denied.

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs urge the Court to deny Defendants' motion to

dismiss and alternative motion to transfer venue.

Respectfully submitted,

/s/ _____

Thomas J. O'Brien #388696
Lauren Aucoin #488945
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 739-5186 (Telephone)
(202) 739-3001 (Facsimile)
to'brien@morganlewis.com (E-mail)
laucoin@morganlewis.com (E-mail)
Attorneys for Plaintiffs

Dated:  December 20, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Xin HE and Lin PAN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case Number: 1:07-CV-01449 (PLF) |
| | ) | |
| Michael CHERTOFF, *et. al* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER**

Upon consideration of Defendants' Corrected Motion to Dismiss or Transfer, Plaintiffs'

Opposition thereto, Defendants' Reply, and the entire record herein, it is this _____ day of

_____, hereby:


____ ORDERED that Defendants' Motion to Dismiss be DENIED.


____ ORDERED that Defendants' Motion to Transfer be DENIED.


SO ORDERED.


_____
UNITED STATES DISTRICT JUDGE